IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| JAMIE NADETH SAMNANG, | * | |
| Plaintiff, | * | |
| v. | * | Civil Case No. SAG-21-01398 |
| BOUCHARD VENTURES, LLC | * | |
| Defendant. | * | |

### MEMORANDUM OPINION

Plaintiff Jamie Nadeth Samnang ("Plaintiff") brought this employment discrimination action against her former employer, Bouchard Ventures, LLC ("BV"). BV has filed a motion to dismiss Plaintiff's Amended Complaint, or, in the alternative, for summary judgment. ECF 20. I have considered the motion, the memorandum filed in support, and the opposition and reply thereto. ECF 21, 22. No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2021). For the reasons set forth herein, BV's motion will be granted, and Plaintiff's claims will be dismissed without prejudice.

**I.   BACKGROUND**

The following facts are derived from the Amended Complaint, ECF 19, and are taken as true for the purposes of adjudicating this motion. On January 2, 2019, Plaintiff, a transgender woman, began working as an instructor at Aspen Beauty Academy of Laurel, which is owned and operated by BV. *Id.* ¶¶ 6, 22. The Amended Complaint alleges that "Mr. and Mrs." Bouchard, who own and manage BV, "on information and belief" did not learn Plaintiff was transgender until she had been hired. *Id.* ¶ 25.

1

In May of 2019, about four months into Plaintiff's employment, an openly gay instructor, Ulysses Powell, told Plaintiff that he had been subjected to overt harassment by a student because of his sexual orientation. *Id.* ¶¶ 27-33. Plaintiff tried to intervene with the student but was unsuccessful. *Id.* ¶¶ 34-36. Plaintiff then reported the incident to Ms. Bouchard, requesting that the student who had harassed Powell be suspended or expelled. *Id.* ¶¶ 38-39. Instead, BV requested an apology from the student. *Id.* ¶ 40.

Several weeks later, on June 11, 2019, Mr. Powell informed Plaintiff that he had heard a group of students plotting to fabricate a complaint against her to get her fired. *Id.* ¶ 43-44. Later that day, Ms. Samnang learned "some students" told the Bouchards that she had made racist statements and comments to include "grotesque and demeaning racial slurs." *Id.* ¶ 46, 48. The students stated that Plaintiff "felt entitled to speak this way because she is a transgender Asian woman." *Id.* ¶ 49. Plaintiff denied all of the allegations and informed the Bouchards that Mr. Powell had heard students planning to fabricate a complaint to management. *Id.* ¶¶ 51-52. Plaintiff also submitted a letter to the Bouchards denying the allegations. *Id.* ¶ 53. Other students deny hearing Plaintiff make any race-based comments or feeling discriminated against by Plaintiff in any way. *Id.* ¶¶ 56-57.

The Amended Complaint alleges that the Bouchards "did not conduct an investigation of the incident" before firing Plaintiff about a week after the complaints, on June 19, 2019. *Id.* ¶¶ 58-59. Plaintiff describes the firing as "part of a pattern of [BV's] selective enforcement of workplace rules giving preferential treatment to its non-LGBTQ employees." *Id.* ¶ 61.

II.     **LEGAL STANDARDS**

A 12(b)(6) motion constitutes an assertion that, even if the facts alleged by a plaintiff are true, the complaint or counterclaim fails as a matter of law "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6); *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997)

(explaining that a court must "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff"). To survive a motion to dismiss, the factual allegations of a complaint or counterclaim, assumed to be true, "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The plaintiff's obligation is to show the "'grounds' of his 'entitle[ment] to relief,'" offering "more than labels and conclusions." *Id.* (alteration in original) (quoting Fed. R. Civ. P. 8(a)(2)). It is not sufficient that the well-pleaded facts suggest "the mere possibility" of liability. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Rather, to withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face,'" meaning that the court could "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 570).

BV styled its motion as a motion "in the alternative" seeking summary judgment. ECF 18. Summary judgment typically is not granted "where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.,* 637 F.3d 435, 448-49 (4th Cir. 2011) (citations omitted*)*. However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party had made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996)). To present the issue, the nonmovant is typically required to file an affidavit pursuant to Federal Rule of Civil Procedure 56(d), explaining why "for specified reasons, it cannot present facts essential to justify its opposition," without further discovery. Here, Plaintiff has done just that, attaching an affidavit from her counsel describing the discovery she seeks to justify her opposition to the summary judgment motion. ECF

21-3. Accordingly, this Court declines to consider BV's motion as one seeking summary judgment and will evaluate it only under the motion to dismiss standard described above.

### III. DISCUSSION

#### A. Title VII Discrimination on the Basis of Gender and Sexual Orientation (Count I)

Plaintiff alleges that her Title VII rights were infringed because she suffered discrimination on the basis of her gender and sexual orientation. *See* ECF 19 at 1. Sex discrimination is covered by Title VII, which renders it unlawful for an employer to "fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's ... sex." 42 U.S.C. § 2000e-2(a)(1). A plaintiff can prove discrimination "either through direct evidence of discriminatory intent, or by using the four-part *McDonnell Douglas* scheme which provides an inference of discriminatory intent." *Karpel v. Inova Health Sys. Servs.*, 134 F.3d 1222, 1227-28 (4th Cir. 1998). The framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), requires a plaintiff initially to show a prima facie case of discrimination, consisting of "(1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class." *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010).

The Amended Complaint contains no factual allegations that would permit a plausible inference that Plaintiff was fired because of her sex or her status as an LGBTQ employee. The complaints of racism alone, which are alleged in the Amended Complaint to have been "grotesque and demeaning," suffice to defeat a showing of satisfactory job performance. Moreover, Plaintiff cites no incident where a non-LGBTQ employee received multiple allegations of racist or otherwise discriminatory behavior but remained employed. In fact, she cites no examples of

investigations conducted into alleged misconduct by non-LGBTQ employees which might evidence a distinction between her treatment and the treatment of employees outside her protected class. The Amended Complaint contains conclusory assertions of "preferential treatment" and "disparate treatment" without providing any actual details in support.

Plaintiff's general allegations that the Bouchards "demonstrated their tolerance and implicit support of anti-LGBTQ harassment" are inapposite. ECF 19 ¶ 26. While Plaintiff cites the Bouchards' decision to require the student to apologize to Mr. Powell rather than face expulsion or suspension, ECF 21 at 6, mere disagreement as to the appropriate degree of sanction imposed for the incident does not plausibly suggest "tolerance" or "support" for the student's improper conduct. Importantly, Plaintiff does not allege that she personally experienced any anti-LGBTQ harassment in the workplace. Thus, her allegations regarding Mr. Powell's harassment by a student or by unidentified customers are irrelevant to her claim, which does not concern an alleged hostile environment for LGBTQ employees.

Instead, her claim is that the Bouchards fired her on the basis of her gender and sexual orientation. The issue presented by this motion, then, is whether she has alleged facts to suggest such motivation. In that respect, this case is on all fours with *Bing v. Brivo Systems, LLC*, 959 F.3d 605 (4th Cir. 2020). In that case, on Bing's first day of employment, his supervisor "Googled" him and discovered a news article about a shooting in which Bing had been implicated, though never charged. *Id.* at 609. The company deemed the incident disqualifying and terminated his employment. *Id.* Bing alleged that the supervisor ran the Google search after discovering that he was black and that the supervisor would not have Googled a white employee. *Id.* However, Bing cited no factual basis for that assertion. The Fourth Circuit stated that the mere fact that the action

5

could have been discriminatory was not enough to state a viable claim. *Id.* at 617-18. Bing had to have actual facts suggesting that his supervisor acted with discriminatory intent. *Id.*

The situation in this case is similar, but even less compelling than Bing's. Plaintiff acknowledges the non-discriminatory reason BV cited for her termination: the allegations that she engaged in "grotesque and demeaning" racist behavior. While she suggests that the reason was pretextual, she proffers no facts to suggest that the Bouchards actually harbored discriminatory intent. In fact, her Amended Complaint demonstrates that, unlike Bing—who was fired on his first day immediately after his supervisor discovered his race—she remained employed for six months by the Bouchards, suggesting that they did not take action to terminate her upon learning she was transgender. Like *Bing,* then, while the Bouchards possibly could have acted with discriminatory intent, Plaintiff has not alleged any facts to indicate that they did. In the absence of any facts suggesting that the Bouchards' actual motivation was to discriminate against Plaintiff on the basis of her gender or sexual orientation, Count I will be dismissed without prejudice.

B. **Title VII Retaliation (Count II)**

Count II alleges a claim for retaliation under Title VII. Retaliation requires evidence "(1) that [plaintiff] engaged in a protected activity, (2) that the employer took a materially adverse action against [plaintiff] and (3) [that] there is a causal connection between the protected activity and the adverse action." *Perkins v. Intern. Paper Co.*, 936 F.3d 196, 213 (4th Cir. 2019). To show a causal connection, a plaintiff asserting a retaliation claim must allege "that his employer took the adverse action '*because* the plaintiff engaged in a protected activity.'" *Id.* (citing *Holland v. Wash. Homes, Inc.*, 487 F.3d 208, 218 (4th Cir. 2007) (emphasis in original) (internal citations omitted). Factors such as temporal proximity and the existence or absence of a legitimate intervening event are both relevant factors in considering causation. *See Feldman v. Law Enforcement Assocs. Corp*,

752 F.3d 339, 348 (4th Cir. 2014).  Here, Plaintiff adequately alleges that she engaged in protected activity when she reported the harassment of Mr. Powell by a student on or about May 17, 2019. ECF 19 ¶¶ 38-39.  She also alleges a materially adverse action, her termination on June 19, 2019. *Id.* ¶ 8.  Plaintiff's complaint, however, does not contain sufficient factual matter to allege a plausible causal link between her protected conduct and subsequent termination.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

With respect to the causal connection, Plaintiff relies exclusively on the temporal proximity between her report on May 17, 2019, and her termination by the Bouchards on June 19, 2019.  *See* ECF 21 at 11 ("at the pleading stage a retaliatory causal connection may be demonstrated where the employer terminates an employee close in time after she raises a protected complaint"). Plaintiff may well be correct that at this stage in proceedings, mere allegations of that one-month temporal proximity would be  sufficient to allege a causal link.  Plaintiff's Amended Complaint does not, however, merely allege temporal proximity.  It further alleges that in the intervening, month-long period between her protected conduct and her termination, Defendant received reports from multiple students that Plaintiff had "made racist statements and comments," which were "loaded with grotesque and demeaning racial slurs." ECF 19 ¶¶ 46, 48.  Accepting all of Plaintiff's factual allegations as true, the complaints of racist conduct lodged against Plaintiff—and timely brought to Defendant's attention—sever any causal link and render her own claims of retaliation implausible.  In order to survive a motion to dismiss in light of the Plaintiff's allegations describing the complaints against her, she would need to plead facts that support a plausible inference that the Bouchard's motivation for firing her was retaliatory *and not* merely a response to the complaints they received about her.  She has not done so.

7

Notably, Plaintiff also alleges that the students' complaints against her were untrue. ECF 19 ¶ 46. She further alleges that "[i]t was readily apparent that the complaint was fabricated and orchestrated in bad faith to target Ms. Samnang because she is transgender." *Id.* ¶ 47. Importantly, however, Plaintiff does not allege any facts sufficient to infer that BV or the Bouchards were aware of—or somehow orchestrated—the fabrication, or knowingly used the fabrication as pretext for retaliatory conduct. Absent any alleged facts to substantiate her assertion, Plaintiff's mere conclusions to the contrary do not render her theory of causation plausible. *See id.* ¶ 58 (Defendant "used the false, malicious, and discriminatory complaint as a pretext for firing Ms. Samnang."). Her contentions that BV incorrectly terminated her for facially implausible allegations and failed to conduct an adequate investigation of their veracity are unavailing, because defendants are not required to conduct a perfect investigation, or to reach an objectively correct conclusion when making an employment decision premised on allegations of employee misconduct. *See generally Smith v. Chrysler Corp.*, 155 F.3d 799, 807 (6th Cir. 1998) ("[W]e do not require that the decisional process used by the employer be optimal or that it left no stone unturned . . . courts should resist attempting to micro-manage the process used by employers in making their employment decisions"); *see also Pesterfield v. TVA*, 941 F.2d 437, 443 (6th Cir.1991) ("The question is thus not whether [an employer's] decision that plaintiff was not employable . . . was correct measured by 'objective' standards. What is relevant is that [the employer], in fact, acted on its good faith belief); *Sharif v. United Airlines, Inc.*, 841 F.3d 199, 206 (4th Cir. 2016). Imposing an alternative standard would impossibly burden employers, who often face contradictory versions of events described by their employees. An employer cannot face liability for discrimination or retaliation simply for making a decision based on its good faith assessment of a contested set of facts. Thus, Plaintiff's express allegations that her employer received multiple complaints that she had engaged

in racist behavior undermine her assertion of a causal link between her protected activity and her termination.  Count II will therefore also be dismissed without prejudice.

## IV. CONCLUSION

For the reasons set forth above, BV's Motion to Dismiss or in the Alternative for Summary Judgment, ECF 20, will be granted and Plaintiff's claims will be dismissed without prejudice.  This case will be closed.  A separate Order follows.


Dated: September 15, 2021                              /s/
                                                    Stephanie A. Gallagher
                                                    United States District Judge